## COMMONWEALTH OF MASSACHUSETTS

**HAMPDEN, ss.**

**SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
DOCKET NO.: 2579CV00270**

**NATIONSTAR MORTGAGE, LLC**
    **Plaintiff,**

**v.**

**05/29/25**

**SHERRYANN STOWELL, DUSTIN
STOWELL, JENNIFER BRUNTY,
TAYLOR STOWELL, THE
SECRETARY OF HOUSING AND
URBAN DEVELOPMENT, 42 NORTH
PRIVATE BANK f/k/a ADMIRALS
BANK, MASSACHUSETTS
DEPARTMENT OF REVENUE,**
    **Defendants/Parties in Interest.**

### FIRST AMENDED COMPLAINT IN INTERPLEADER
#### (Mortgage Foreclosure Surplus Proceeds)

### INTRODUCTION

This action is being brought after the foreclosure sale conducted by Nationstar Mortgage, LLC ("Nationstar") on the property located at 94 Harvey Johnson Drive, Agawam, MA 01001 (the "Property") pursuant to a mortgage granted by Caresses Lingham and Wayne O. Stowell (the "Borrowers") to Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for Sovereign Bank dated July 17, 2009 and recorded at the Hampden County Registry of Deeds (the "Registry") in Book 17903, Page 282. The Plaintiff is currently holding surplus funds that it would like to pay into the Court and then be discharged from any further obligation involving this matter.

### PARTIES

1.     Plaintiff, Nationstar Mortgage, LLC, is a limited-liability corporation with an address of 8950 Cypress Waters Blvd., Coppell, Texas 75019.

**3**

2.    Defendant, Sherryann Stowell, is an individual with a last known address of 99-060 Kauhale Street, Apartment 304, Aiea, HI 96701.

3.    Defendant, Dustin Stowell, is an individual with a last known address of 5100 Welcome All Rd., SW, Apartment G13, Atlanta, GA 30349.

4.    Defendant, Taylor Stowell, is an individual with a last known address of 99-060 Kauhale Street, Apartment 304, Aiea, HI 96701.

5.    Defendant, The Secretary of Housing and Urban Development, is a federal agency with an address of 451 7th Street, SW, Washington, D.C. 20410.

6.    Defendant, 42 North Private Bank f/k/a Admirals Bank, is a federal savings institution with an address of 250 Royall Street, Canton, MA 02021.

7.    Defendant, Massachusetts Department of Revenue, is a state agency with a mailing address of P.O. Box 7023, Chelsea, MA 02204.

## FACTS

8.    On March 27, 2002, the Borrowers took title to the Property by Quitclaim Deed recorded with the Registry in Book 12234, Page 277. A true and accurate copy of the Quitclaim Deed is attached hereto as **Exhibit A**.

9.    On July 17, 2009, the Borrowers granted a mortgage to MERS, as nominee for Sovereign Bank, with a principal amount of $155,677.00 encumbering the Property. The Mortgage was recorded with the Registry in Book 17903, Page 282. A true and accurate copy of the Mortgage is attached hereto as **Exhibit B**.

10.   On March 24, 2017, MERS, as nominee for Sovereign Bank assigned the Mortgage to Nationstar. The Assignment was recorded with the Registry in Book 21695, Page 530. A true and accurate copy of the Assignment is attached hereto as **Exhibit C.**

11.    On April 4, 2012, the Borrowers granted a mortgage to Admirals Bank, with the principal amount of $25,000.00 encumbering the Property (the "Second Mortgage"). The Second Mortgage was recorded with the Registry in Book 19313, Page 384. A true and accurate copy of the Second Mortgage is attached hereto as **Exhibit D.**

12.    On November 23, 2016, First Federal Bank of Florida erroneously assigned the Second Mortgage to the United States of America, U.S. Department of Housing and Urban Development. The Assignment was recorded with the Registry in Book 21534, Page 312. A true and accurate copy of the Assignment is attached hereto as **Exhibit E.**

13.    On November 24, 2021, the Borrowers granted a mortgage to the Secretary of Housing and Urban Development, with the principal amount of $27,644.52 encumbering the Property. The Mortgage was recorded with the Registry in Book 24288, Page 31. A true and accurate copy of the Mortgage is attached hereto as **Exhibit F.**

14.    On May 15, 2023, Nationstar foreclosed on the Property by public auction.

15.    The Property sold to a third party for $206,000.00. A true and accurate copy of the foreclosure deed is attached hereto as **Exhibit G.**

16.    After satisfaction of the indebtedness owed to Nationstar, including costs of foreclosure and sale, accrued interest and late charges in the aggregate sum of $136,265.16, there was a surplus held by the Plaintiff in the amount of $69,734.84, plus any accrued interest.

17.    The following persons and entities appear of record to be all persons or entities having a possible interest in said funds held by the Plaintiff, to wit:

    a.    Sherryann Stowell;

    b.    Dustin Stowell;

    c.   Jennifer Brunty;

    d.   Taylor Stowell;

    e.   42 North Private Bank f/k/a Admirals Bank;

    f.   The Secretary of Housing and Urban Development; and

    g.   Massachusetts Department of Revenue.

## <u>COUNT ONE – DECLARATORY JUDGMENT</u>

18.    Nationstar repeats and realleges the foregoing paragraphs and incorporates the same herein by reference.

19.    Nationstar believes it runs a risk that adverse claims to the surplus proceeds could be made by the named Defendants in this action.

20.    Nationstar is unaware of the respective rights of the Defendants and is unable to determine to whom the funds are justly due and payable.

21.    Nationstar's only claim to the surplus proceeds is to have its costs and expenses that are associated with this action paid from the surplus proceeds. The Plaintiff has at all times been willing to pay the surplus to such entities or person as should lawfully be entitled to receive the same and to whom Nationstar could safely and without hazard to itself pay the same and Nationstar hereby offers to transfer the surplus to this Court at such time and under such conditions as the Court may order and direct.

22.    Where a person may be subject to claims of double or multiple liability, proceeding in interpleader is appropriate. Mass. R. Civ. P. 22. One of the purposes of interpleader is to sort out the amounts and priorities of competing claims to a fund. <u>National Lumber Co. v. Canton Inst. for Sav., Bank of Canton</u>, 56 Mass.App.Ct. 186 (2002), rev. den, 438 Mass. 1106 (2003). A plaintiff in interpleader following a foreclosure sale is

subject to claims of liability by those with a recorded interest in the foreclosed property at the time of the sale. See St. Mary's Credit Union v. Mavretic, 1999 WL 788535 *3 (Mass.App.Div.). For purposes of distribution of foreclosure surplus funds, the priority of rights depended upon the priority in time of the recording of the liens which they had held prior to foreclosure. St. Mary's Credit Union v. Mavretic, 1999 Mass. App. Div. 159 (1999).

**WHEREFORE**, the Plaintiff, Nationstar Mortgage, LLC, respectfully prays that this Honorable Court:

1.  Order that all named Defendants appear and prove their claims, if any, to the surplus funds;

2.  Nationstar be allowed its reasonable costs, expenses, and attorney's fees in connection with the filing of this Interpleader Action;

3.  Nationstar be permitted to pay all surplus funds held by it in the amount of $69,734.84 plus any accrued interest, less the attorney fees and costs incurred by the Plaintiff in this Interpleader Action, into this Court;

4.  The rights of the Defendants herein named be determined by this Court as to the surplus funds paid into Court;

5.  This action be discontinued and dismissed as to Nationstar it being merely a stakeholder and having no interest in said funds; and,

6.  Grant any other and further relief as the Court deems just and proper.

Signature on following page

Respectfully submitted,
**NATIONSTAR MORTGAGE, LLC**
By its attorney,


*/S/Anna Epstein*
Anna Epstein
BBO # 715116
Brock & Scott, PLLC
23 Messenger Street, Second Floor
Plainville, MA  02762
Phone: (508) 379-4709
anna.epstein@brockandscott.com

Dated: May 29, 2025

# EXHIBIT A

## DEED

### KNOW ALL MEN BY THESE PRESENTS, THAT I
### PAMELA M. HENDERSON

Of 94 Harvey Johnson Drive, Agawam, Hampden County, Massachusetts, for consideration paid, and in full consideration of

### ONE HUNDRED FORTY-FOUR THOUSAND AND NO/100 ($144,000.00) DOLLARS

Grant to Wayne O. Stowell and Caresses Lingham of 266 Essex St., Holyoke, Hampden County, Massachusetts 01040 as Joint Tenants.

With Quitclaim covenants

The land with the buildings thereon, situated in Agawam, Hampden County, Massachusetts, and being known and designated as Lot #20 as shown on a plan of lots recorded in the Hampden County Registry of Deeds in Book of Plans 32, Page 38, and being more particularly bounded and described as follows:

SOUTHERLY by Harvey Johnson Drive, seventy-five (75) feet; EASTERLY by Lot #21 as shown on said plan, one hundred fifty-five and eighty-five one hundredths (155.85) feet; NORTHERLY by land of Boisari Oil Service, Inc., eighty-two and seventy-two one hundredths (82.72) feet; and WESTERLY by Lot # 19 as shown on said plan, one hundred twenty and ninety-four one hundredths (120.94) feet.

SUBJECT to easement rights granted to the Western Massachusetts Electric Company, et al by instrument dated November 14, 1950 and recorded in the Hampden County Registry of Deeds, Book 2086, page 417.

Being the same premises conveyed to the grantors herein by deed of James F. Liquori and Patricia Ann Liquori, dated December 20, 2000 and recorded in the Hampden County Registry of Deeds in Book 11439, Page 131. See also deed recorded in Book 7296, 550.

Executed as a sealed instrument this 27 day of March, 2002.

_Julia A. Fullwood_
WITNESS

_Pamela M. Henderson_
Pamela M. Henderson


THE COMMONWEALTH OF MASSACHUSETTS

HAMPDEN, SS.                                        MARCH 27, 2002

Then personally appeared the above-named Pamela M. Henderson and acknowledged the execution of the foregoing instrument to be her free act and deed, before me.

_Joel F. Struck_
NOTARY PUBLIC, JOEL R STRUCK
My Commission expires:  JUNE 14, 2007

SPRINGFIELD
DEEDS REG12
HAMPDEN

01
$656.64

03/27/02 4:10PM
00060 KEY7

FE      $656.64

CON

# EXHIBIT B

Bk 17903 Pg282    #48120
07-22-2009 @ 03:55p

Return To:

Sovereign Bank, MCS-10-421-CA2
450 Penn Street
Reading, PA 19602

Prepared By:

Nelson Perez
1010 Famington Avenue
CT1-CBO-0522
West Hartford, CT 06107

——————————— [Space Above This Line For Recording Data] ———————————

**State of Massachusetts**                    MORTGAGE

<span style="writing-mode:vertical">94 Harvey Johnson Dr., Agawam</span>

THIS MORTGAGE ("Security Instrument") is given on **July 17, 2009**
The Mortgagor is **Caresses Lingham and Wayne O. Stowell**

("Borrower"). This Security Instrument is given to Mortgage Electronic Registration Systems, Inc. ("MERS"), (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns), as mortgagee. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS **Sovereign Bank**

("Lender") is organized and existing under the laws of **The United States of America** and has an address of **1130 Berkshire Blvd., Wyomissing, PA 19610**
. Borrower owes
Lender the principal sum of **One Hundred Fifty Five Thousand Six Hundred Seventy Seven And Zero/100**
Dollars (U.S. **$155,677.00**            ) This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on **August 01, 2024**            . This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's

Date Filed 5/29/2025 11:16 AM
Superior Court - Hampden
Docket Number 2579CV0029 Case 3:25-cv-11774-MGM    Document 1-1    Filed 06/18/25    Page 11 of 44

Bk 17903 Pg283 #48120

covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in **Hampden** County, Massachusetts:
**See attached legal description**

Parcel ID Number: **K12-3-1**
which has the address of **94 Harvey Johnson Drive**                                [Street]
**Agawam**                          [City], Massachusetts **01001**            [Zip Code]
("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.
Borrower and Lender covenant and agree as follows:
UNIFORM COVENANTS.

**1. Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

**2. Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 *et seq.* and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3. Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control.Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall

satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

    **(a) Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

        (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

        (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

    **(b) Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

        (i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

        (ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

    **(c) No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

    **(d) Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

    **(e) Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

    **10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

    **11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and

revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may invoke the STATUTORY POWER OF SALE and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower, and to other persons prescribed by applicable law, in the manner provided by applicable law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by applicable law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.**

**19. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**20. Waivers.** Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of curtesy and dower in the Property.

**21. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

☐ Condominium Rider          ☐ Growing Equity Rider          ☐ Other [specify]
☐ Planned Unit Development Rider   ☐ Graduated Payment Rider

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                   Caresses Lingham            -Borrower

_____          _____ (Seal)
                                   Wayne O. Stowell            -Borrower

_____ (Seal)   _____ (Seal)
                -Borrower                              -Borrower

_____ (Seal)   _____ (Seal)
                -Borrower                              -Borrower

_____ (Seal)   _____ (Seal)
Witness:        -XXXXXX                               -Borrower
Thomas M. O'Connor (to both)

**COMMONWEALTH OF MASSACHUSETTS,** Hampden                    County ss:

On this **17th** day of **July, 2009**                    , before me, the undersigned notary public, personally appeared **Caresses Lingham and Wayne O. Stowell**

                                                           proved to me through satisfactory evidence of identification, which was/were **MA RMV licenses**                    , to be the person(s) whose name(s) is/are signed on the preceding document, and acknowledged to me that he/she/they signed it voluntarily for its stated purpose.

My Commission Expires:
(Seal)

_____
Notary Public

THOMAS M. O'CONNOR
Notary Public
Commonwealth of Massachusetts
My Commission Expires
October 12, 2012

Exhibit A

The land with the buildings thereon, situated in Agawam, Hampden County,
Massachusetts, and being known ad designated as Lot #20 as shown on a plan of lots
recorded in the Hampden County Registry of Deeds in Book of Plans 32, Page 38, to
which reference may be made for a more particular description.

Subject to easement rights granted to the Western Massachusetts Electric Company et al.
by Instrument dated November 14, 1950, and recorded in the Hampden County Registry
of Deeds, Book 2086, Page 417.

Being the same premises conveyed to the grantors herein by Deed dated March 27, 2002
and recorded in the Hampden County Registry of Deeds in Book 12234, Page 277.

DONALD E. ASHE, REGISTER
HAMPDEN COUNTY REGISTRY OF DEEDS

Date Filed 5/29/2025 11:16 AM
Superior Court - Hampden
Docket Number 2579CV00270

# EXHIBIT C

Date Filed 5/29/2025 11:16 AM
Superior Court - Hampden
Docket Number 2579CV00253

Case 3:25-cv-11774-MGM    Document 1-1    Filed 06/18/25    Page 21 of 44

Bk 21695 Pg230 #28882
05-25-2017 @ 02:38p

## CORPORATE ASSIGNMENT OF MORTGAGE

**Hampden, Massachusetts**
**SELLER'S SERVICING #:**          "LINGHAM"

Date of Assignment:: May 24th, 2017
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR
SOVEREIGN BANK, ITS SUCCESSORS AND ASSIGNS at P.O. BOX 2026, FLINT, MI 48501-2026
Assignee: NATIONSTAR MORTGAGE LLC at 8950 CYPRESS WATERS BLVD., COPPELL, TX
75019

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS. INC has a mailing address at P.O. BOX
2026, FLINT, MI 48501-2026

Executed By: CARESSES LINGHAM AND WAYNE O. STOWELL  To: MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC., AS NOMINEE FOR SOVEREIGN BANK
Date of Mortgage: 07/17/2009 Recorded: 07/22/2009 in Book/Reel/Liber: 17903 Page/Folio: 282 as
Instrument No.: 48120 in the County of Hampden, State of Massachusetts.

Property Address: 94 HARVEY JOHNSON DRIVE, AGAWAM, MA 01001

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and
sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named
Assignee, the said Mortgage having an original principal sum of $155,677.00 with interest, secured
thereby, and the full benefit of all the powers and of all the covenants and provisos therein contained, and
the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's interest under the
Mortgage.

TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever,
subject to the terms contained in said Mortgage.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR SOVEREIGN
BANK, ITS SUCCESSORS AND ASSIGNS
On May 24th, 2017

By: _____
MOHAMED HAMEED,
Assistant Secretary

Recording Requested By:
Nationstar Mortgage
When Recorded Return To:
DOCUMENT ADMINISTRATION
Nationstar Mortgage
8950 CYPRESS WATERS BLVD
COPPELL, TX  75019

Property Address:
94 HARVEY JOHNSON DRIVE
AGAWAM, MA 01001

CORPORATE ASSIGNMENT OF MORTGAGE Page 2 of 2

STATE OF Texas
COUNTY OF Dallas

On May 24th, 2017, before me, COLLEEN BARNETT, a Notary Public in and for Dallas in the State of Texas, personally appeared MOHAMED HAMEED, Assistant Secretary, personally known to me to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

COLLEEN BARNETT
Notary Expires: 11/30/2019 #130453613

COLLEEN BARNETT
Notary Public State of Texas
Comm Expires 11-30-2019
Notary ID 130453613

(This area for notarial seal)

Date Filed 5/29/2025 11:16 AM
Superior Court - Hampden
Docket Number 2579CV00250

# EXHIBIT D

After Recording Return To:
cfacts
Centre City Tower
650 Smithfield Street, 18th Floor
Pittsburgh, PA 15222

Property Address:
94 HARVEY JOHNSON DRIVE
AGAWAM MA 01001

Mortgage Broker:                    Loan Originator Name:

Post Office Address:                Post Office Address:

License Number:                     License Number:

[X] No Mortgage Broker or Loan Originator was involved.

——————————————— [Space Above This Line For Recording Data] ———————————————

# MORTGAGE

THIS MORTGAGE is made this **4th** day of **April, 2012**, between the Mortgagor, **CARESSES L LINGHAM** and **WAYNE O STOWELL, as Joint Tenants**

(herein "Borrower"),

and the Mortgagee, **Admirals Bank**

organized and existing under the laws of **the United States of America**, whose address is **15 Park Row West, Providence, RI 02903**

(herein "Lender").

WHEREAS, Borrower is indebted to Lender in the principal sum of U.S. $ **25,000.00**, which indebtedness is evidenced by Borrower's note dated **April 4, 2012** and extensions and renewals thereof (herein "Note"), providing for monthly installments of principal and interest, with the balance of the indebtedness, if not sooner paid, due and payable on **April 9, 2032**.

TO SECURE to Lender the repayment of the indebtedness evidenced by the Note, with interest thereon; the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Mortgage; and the performance of the covenants and agreements of Borrower herein contained, Borrower

MASSACHUSETTS SECOND MORTGAGE

GreatDocs®
(Page 1 of 8)



does hereby mortgage, grant and convey to Lender, with power of sale, the following described property located in the County of **HAMPDEN** , State of Massachusetts:

**See Attached Addendum**

which currently has the address of **94 HARVEY JOHNSON DRIVE**

[Street]

**AGAWAM** , Massachusetts **01001** ("Property Address"):

[City]     [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents, all of which shall be deemed to be and remain a part of the property covered by this Mortgage; and all of the foregoing, together with said property (or the leasehold estate if this Mortgage is on a leasehold) are hereinafter referred to as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property, and that the Property is unencumbered, except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest.** Borrower shall promptly pay when due the principal and interest indebtedness evidenced by the Note and late charges as provided in the Note.

2. **Funds for Taxes and Insurance.** Subject to applicable law or a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Mortgage, and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Mortgage that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law

GreatDocs®
(Page 2 of 8)

requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Mortgage.

If the amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Mortgage, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 17 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Mortgage.

3. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, then to interest payable on the Note, and then to the principal of the Note.

4. **Prior Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain priority over this Mortgage, and leasehold payments or ground rents, if any.

5. **Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and such other hazards as Lender may require and in such amounts and for such periods as Lender may require.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Mortgage.

6. **Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Mortgage is on a leasehold. If this Mortgage is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

7. **Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Mortgage, or if any action or proceeding is commenced which materially affects Lender's

GreatDocs®
(Page 3 of 8)



interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Mortgage, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Mortgage. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

**8. Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefore related to Lender's interest in the Property.

**9. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.

**10. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Mortgage granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Mortgage by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

**11. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Mortgage, but does not execute the Note, (a) is co-signing this Mortgage only to mortgage, grant and convey that Borrower's interest in the Property to Lender under the terms of this Mortgage, (b) is not personally liable on the Note or under this Mortgage, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Mortgage or the Note without that Borrower's consent and without releasing that Borrower or modifying this Mortgage as to that Borrower's interest in the Property.

**12. Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Mortgage shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Mortgage shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

**13. Governing Law; Severability.** The state and local laws applicable to this Mortgage shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of federal law to this Mortgage. In the event that any provision or clause of this Mortgage or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Mortgage or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Mortgage and the Note

GreatDocs®
(Page 4 of 8)



are declared to be severable. As used herein, "costs," "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

14.  **Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and of this Mortgage at the time of execution or after recordation hereof.

15.  **Rehabilitation Loan Agreement.** Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

16.  **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Mortgage. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Mortgage.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Mortgage. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Mortgage without further notice or demand on Borrower.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17.  **Acceleration; Remedies.** Except as provided in paragraph 16 hereof, upon Borrower's breach of any covenant or agreement of Borrower in this Mortgage, including the covenants to pay when due any sums secured by this Mortgage, Lender, prior to acceleration, shall give notice to Borrower as provided in paragraph 12 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 10 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Mortgage and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the nonexistence of a default or any other defense of Borrower to acceleration and sale. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option, may declare all of the sums secured by this Mortgage to be immediately due and payable without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by applicable law. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 17, including, but not limited to, reasonable attorneys' fees.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower, and to any other person required by applicable law, in the manner provided by applicable law. Lender shall publish the notice of sale and the Property shall be sold in the manner prescribed by applicable law. Lender or Lender's designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all reasonable costs and expenses of the sale, including reasonable attorneys' fees and costs of title evidence; (b) to all sums secured by this Mortgage; and (c) the excess, if any, to the person or persons legally entitled thereto.

18.  **Borrower's Right to Reinstate.** Notwithstanding Lender's acceleration of the sums secured by this Mortgage due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Mortgage discontinued at any time prior to the earlier to occur of (i) sale of the Property pursuant to the power of sale contained in this Mortgage or (ii) entry of a judgment enforcing this Mortgage if: (a) Borrower pays Lender all sums which would be then due under this Mortgage and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Mortgage; (c) Borrower pays all reasonable expenses incurred by Lender in enforcing the



covenants and agreements of Borrower contained in this Mortgage, and in enforcing Lender's remedies as provided in paragraph 17 hereof, including, but not limited to, reasonable attorneys' fees; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Mortgage, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Mortgage shall continue unimpaired. Upon such payment and cure by Borrower, this Mortgage and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

19.  **Assignment of Rents; Lender in Possession.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 17 hereof or abandonment of the Property, Lender shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property, including those past due. All rents collected by Lender shall be applied first to payment of the costs of management of the Property and collections of rents, including, but not limited to, reasonable attorneys' fees, and then to the sums secured by this Mortgage. Lender shall be liable to account only for those rents actually received.

20.  **Release.** Upon payment of all sums secured by this Mortgage, Lender shall discharge this Mortgage without cost to Borrower. Borrower shall pay all costs of recordation, if any.

**REQUEST FOR NOTICE OF DEFAULT**
**AND FORECLOSURE UNDER SUPERIOR**
**MORTGAGES OR DEEDS OF TRUST**

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Mortgage to give Notice to Lender, at Lender's address set forth on page one of this Mortgage, of any default under the superior encumbrance and of any sale or other foreclosure action.



GreatDeal®
(Page 6 of 6)

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages
1 through 8 of this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
CARESSES L LINGHAM      -Borrower

_____ (Seal)
WAYNE O STOWELL          -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower



GreatDocs®
(Page 7 of 8)

Commonwealth of Massachusetts  HAMPDEN

County ss.

On this  **4th**  day of  **April, 2012**             , before me, the undersigned notary public, personally appeared  **CARESSES L LINGHAM** and **WAYNE D STOWELL**


(name of document signer), proved to me through satisfactory evidence of identification, which were
                                    , to be the person whose name is signed on the preceding
or attached document, and acknowledged to me that (he) (she) signed it voluntarily for its stated purpose.

*Terri F. Rockett*

Notary Public

TERRI F. ROCKETT
Notary Public
COMMONWEALTH OF MASSACHUSETTS
My Commission Expires
September 24, 2015

My commission expires:  9/24/15

GreatDocs*
(Page 8 of 8)

## LEGAL DESCRIPTION – EXHIBIT A

THE LAND WITH THE BUILDINGS THEREON, SITUATED IN AGAWAM, HAMPDEN COUNTY, MASSACHUSETTS, AND BEING KNOWN AND DESIGNATED AS LOT #20 AS SHOWN ON A PLAN OF LOTS RECORDED IN THE HAMPDEN COUNTY REGISTRY OF DEEDS IN BOOK OF PLANS 32, PAGE 38, AND BEING MORE PARTICULARLY BOUNDED AND DESCRIBED AS FOLLOWS:

SOUTHERLY BY HARVEY JOHNSON DRIVE, SEVENTY-FIVE (75) FEET; EASTERLY BY LOT #21 AS SHOWN ON SAID PLAN, ONE HUNDRED FIFTY-FIVE AND EIGHTY-FIVE ONE-HUNDREDTHS (155.85) FEET; NORTHERLY BY LAND OF BOLSARI OIL SERVICE, INC., EIGHTY-TWO AND SEVENTY-TWO ONE HUNDREDTHS (82.72) FEET; AND WESTERLY BY LOT #19 AS SHOWN ON SAID PLAN, ONE HUNDRED TWENTY AND NINETY-FOUR ONE-HUNDREDTHS (120.94) FEET.

TAX ID #K12-3-1

Being the same property conveyed to WAYNE O. STOWELL and CARESSES LINGHAM, AS JOINT TENANTS, by deed dated 3-27-02 and recorded 3-27-02, deed book 12234, page 277.

DONALD E. ASHE, REGISTER
HAMPDEN COUNTY REGISTRY OF DEEDS

# EXHIBIT E

## ASSIGNMENT OF MORTGAGE

Mortgagor: Caresses L Lingham
           Wayne O Stowell
           94 Harvey Johnson Dr.        Recorded: 06/22/2012
           Agawam, MA 01001           Book: 19313 Pages: 384
                                              Dated: 04/04/2012

KNOWN ALL MEN BY THESE PRESENTS THAT First Federal Bank of Florida, a
Federally Charted Stock Savings Bank, (Assignor) 4705 West US Highway 90, Lake
City, Florida 32055, beneficiary named in a certain Mortgage in favor of Assignor, given
by above named Borrower(s), said instrument dated and referenced as above and
recorded in the Hampden County Register of Deeds Office, State of Massachusetts, in the
amount of $25,000.00 plus accrued interest and other good and valuable consideration
paid by the United States of America, US Department of Housing and Urban
Development (hereinafter "Assignee"), 52 Corporate Circle, Albany, NY 12203, receipt
whereof is hereby acknowledged, does hereby assign, transfer, and set over unto
Assignee the said mortgage and note and claim thereby secured, and all its right, title, and
interest in and to the premises therein described.

TO HAVE AND TO HOLD the same to Assignee, its successors and assigns, to it their
use, benefit and behoove forever, subject nevertheless to the conditions therein contained
and to redemption according to law, does hereby substitute and appoint the said, its
successors and assigns, to be the attorney of the Mortgagor with all the rights and powers
possessed by the Assignor by the virtue of said Mortgage.

IN WITNESS WHEREOF, the said First Federal Bank of Florida presents to be signed in
its name and behalf by its Sr. Vice President, Senior Commercial and Retail Lending
Executive and Sr. Lender Executive Vice President on this 23rd day of November 2016
A.D.

                             First Federal Bank of Florida

                        By: _____

                        Gigi W Register
                        Sr. VP, Senior Commercial & Retail Lending Executive

By: _____
Witness

                        By: _____

                        Robert W Turbeville
                        Sr. Lender Executive Vice President

State of Florida
Lake City, FL.

In Lake City on the 23rd Day of November 2016 A.D. appeared before me, personally
appeared Gigi W Register and Robert W Turbeville Sr. Lender Executive Vice President
at First Federal Bank of Florida, to be known and known by me to be the parties
executing the foregoing instrument in their said capacities as Vice President, Senior
Commercial & Retail Lending Executive and Sr. Lender Executive Vice President at
First Federal Bank of Florida and they acknowledged said instrument by them executed
to be their free act and deed in their said capacities and the free act and deed of said
corporation.

Return to:
CFACTS
650 SMITHFIELD ST.
STE. 1850
PITTSBURGH, PA 15222

                          _____
                                      NOTARY PUBLIC

My commission expires: 

TERESA I. DAVIS
Notary Public - State of Florida
My Comm. Expires May 5, 2018
Commission # FF 119239

# EXHIBIT F

Recording Requested By/Return To:
**NATIONSTAR MORTGAGE LLC
D/B/A MR. COOPER
999 TECH ROW, #200
MADISON HEIGHTS, MICHIGAN
48071**

This Instrument Prepared By:

*Sabrina Williams*

**NATIONSTAR MORTGAGE LLC
D/B/A MR. COOPER
8950 CYPRESS WATERS BLVD.
COPPELL, TX 75019**

Sabrina Williams
Vice President

———————— [Space Above This Line For Recording Data] ————————

## PARTIAL CLAIM MORTGAGE

**Property Address: 94 HARVEY JOHNSON DRIVE, AGAWAM, MASSACHUSETTS 01001**

THIS SUBORDINATE MORTGAGE ("Security Instrument") is given on the date of execution. The Mortgagor is CARESSES LINGHAM AND WAYNE O. STOWELL, whose address is 94 HARVEY JOHNSON DRIVE, AGAWAM, MASSACHUSETTS 01001 ("Borrower"). This Security Instrument is given to the Secretary of Housing and Urban Development, and whose address is 451 7th Street S.W., Washington, DC 20410 ("Lender"). Borrower owes Lender the principal sum of TWENTY-SEVEN THOUSAND SIX HUNDRED FORTY-FOUR AND 52/100THS Dollars (U.S. $27,644.52).

**Notwithstanding the foregoing or any other provisions contained herein, if personal liability with respect to any amounts payable under the primary Note has been discharged in bankruptcy, Borrower and Lender understand and agree that nothing contained herein with respect to any**

*(page 1 of 6)*





amounts payable under this Note, shall be construed to impose personal liability to repay any such obligation in violation of such discharge. Borrower and Lender further understand and agree that to the extent that such personal liability with respect to any amounts payable under the primary Note has been discharged in bankruptcy, Borrower is entering into this Note voluntarily for the benefits to be obtained thereby and not as an affirmation of the debt evidenced by the primary Note, and that this Note, or any actions taken by the Lender in relation to this Note, does not constitute a demand for payment or any attempt to collect any such previously discharged obligation.

This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for the full debt, if not paid earlier, due and payable on DECEMBER 01, 2051.

This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, advanced under Paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, warrant, grant and convey to the Lender, with the statutory power of sale the following described property located in HAMPDEN County, MASSACHUSETTS:

LEGAL DESCRIPTION:
THE LAND WITH THE BUILDINGS THEREON, SITUATED IN AGAWAM, HAMPDEN COUNTY, MASSACHUSETTS, AND BEING KNOWN AD DESIGNATED AS LOT NO. 20 AS SHOWN ON A PLAN OF LOTS RECORDED IN THE HAMPDEN COUNTY REGISTRY OF DEEDS IN BOOK OF PLANS 32, PAGE 38 TO WHICH REFERENCE MAY BE MADE FOR A MORE PARTICULAR DESCRIPTION. SUBJECT TO EASEMENT RIGHTS GRANTED TO THE WESTERN MASSACHUSETTS ELECTRIC COMPANY ET AL. BY INSTRUMENT DATED NOVEMBER 14, 1950, AND RECORDED IN THE HAMPDEN COUNTY REGISTRY OF DEEDS, BOOK 2086, PAGE 417. BEING THE SAME PREMISES CONVEYED TO THE GRANTORS HEREIN BY DEED DATED MARCH 27, 2002 AND RECORDED IN THE HAMPDEN COUNTY REGISTRY OF DEEDS IN BOOK 12234, PAGE 277.
Tax Parcel No.:
K12-3-1

which has the address of 94 HARVEY JOHNSON DRIVE, AGAWAM, MASSACHUSETTS 01001 ("Property Address").

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and

*(page 2 of 6)*



additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:

UNIFORM COVENANTS.

**1. Payment of Principal.** Borrower shall pay when due the principal of the debt evidenced by the Note.

**2. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**3. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the term of this Security Instrument or the Note without that Borrower's consent.

*(page 3 of 6)*



Date Filed 5/29/2025 11:16 AM
Superior Court - Hampden
Docket Number 2579CV00250

**4. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to: U.S. Department of Housing and Urban Development, Attention: Single Family Notes Branch, 451 7th Street S.W., Washington, DC 20410 or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**5. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**6. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

NON-UNIFORM COVENANTS.

Borrower and Lender further covenant and agree as follows:

**7. Acceleration; Remedies.**

**Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument or the Note. Following acceleration, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 7, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower, and to other persons prescribed by applicable law, in the manner provided by applicable law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by applicable law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all**

*(page 4 of 6)*



expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 4 of the Note, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. § 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this paragraph or applicable law.

**8.   Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument. Lender may charge Borrower for the actual costs and fees of recordation of the release where recordation is the Borrower's responsibility under applicable law.

**9.   Subordination of Homestead and Waivers.** If Borrower heretofore has acquired or hereafter acquires an estate of homestead in the Property, Borrower hereby agrees, to the greatest extent permitted by applicable law, that such homestead estate is subordinated in all respects to this Security Instrument and the amount due under the Note and to all renewals, extensions and modifications of this Security Instrument or the Note, and that said homestead estate is subject to all of the rights of Lender under this Security Instrument and the Note and all renewals, extensions and modifications of this Security Instrument and the Note, and is subordinate to the lien evidenced by this Security Instrument, and all renewals, extensions and modifications of this Security Instrument. Borrower waives and relinquishes all rights of curtesy and dower in the Property.

**10.**   No mortgage broker or mortgage loan originator was involved in this Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.



_____     Date: 11 / 24 / 21
Borrower -   **CARESSES LINGHAM**

_____     Date: 11 / 24 / 21
Borrower -   **WAYNE O. STOWELL**

(page 5 of 6)

COMMONWEALTH OF **MASSACHUSETTS**

COUNTY OF _Hampden_
Enter County Here

On this 24ᵗʰ day of _November_ 2021, before me, the undersigned notary public, **CARESSES LINGHAM and WAYNE O. STOWELL**, personally appeared, proved to me through satisfactory evidence of identification, which were _MA Driver License_, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that (he) (she) signed it voluntarily for its stated purpose.



(Signature of officer taking acknowledgment)

(Seal)

JESUS ARCE
Notary Public
COMMONWEALTH OF MASSACHUSETTS
My Commission Expires
November 04, 2027

(page 6 of 6)



# EXHIBIT G

FORECLOSURE DEED

UNDER POWER OF SALE IN MORTGAGE

KNOW ALL MEN BY THESE PRESENTS, Nationstar Mortgage LLC d/b/a Mr. Cooper (the "Bank") having a usual place of business at 8950 Cypress Waters Blvd., Coppell, TX 75019 holder of that mortgage from Caresses Lingham and Wayne O. Stowell dated 7/17/2009 and recorded in the Hampden County Registry of Deeds in Book 17903 at Page 282 et seq., by the power conferred by said Mortgage and by every other power it thereunto enabling, for consideration paid in the amount of Two Hundred Six Thousand and 00/100 Dollars ($206,000.00) grants to PAH Properties LLC whose mailing address is 12 Hannoush Drive, West Springfield, MA 01089 the following described property, which has an address of 94 Harvey Johnson Drive, Agawam, MA 01001.

SEE EXHIBIT "A" ATTACHED HERETO

IN WITNESS WHEREOF, Nationstar Mortgage LLC d/b/a Mr. Cooper has caused these presents to be executed by its duly authorized officer, who hereunto set his/her hand as such officer and affix its corporate seal this ___18___ day of _____July_____, 20 _23_.

Nationstar Mortgage LLC d/b/a Mr. Cooper

By: _____
Name:  Minh Nghiem
Its:  Document Execution Associate

STATE OF _____TEXAS_____
COUNTY OF ____DENTON____

In ___Lewisville, Texas___ on the __18__ day of _____July_____, 20 _23_, before me personally appeared____Minh Nghiem____, to me known and known by me to be the party executing the foregoing instrument who executed the foregoing instrument as the Document Execution Associate (title), of the entity that executed the foregoing instrument, and acknowledged the same to be the free act and deed of said entity, before me.

_____
Notary Public
Printed Name:  Talya Harris
My Commission Expires: 08-21-2023

TALYA R. HARRIS
Notary Public, State of Texas
Comm. Expires 08-21-2023
Notary ID 130341664

Property Address: 94 Harvey Johnson Drive, Agawam, MA 01001

**Exhibit A**

The land with the buildings thereon, situated in Agawam, Hampden County, Massachusetts, and being known ad designated as Lot #20 as shown on a plan of lots recorded in the Hampden County Registry of Deeds in Book of Plans 32, Page 38, to which reference may be made for a more particular description.

Subject to easement rights granted to the Western Massachusetts Electric Company et al. by Instrument dated November 14, 1950, and recorded in the Hampden County Registry of Deeds, Book 2086, Page 417.

Being the same premises conveyed to the grantors herein by Deed dated March 27, 2002 and recorded in the Hampden County Registry of Deeds in Book 12234, Page 277.